**Dissenting Opinion Issued July 14, 2026.**



In The

# Fifteenth Court of Appeals

_____

## NO. 15-25-00235-CV

_____

## IN RE FRANK JACKSON, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**Business Court Division 11B**
**Harris County, Texas**
**Trial Court Cause No. 25-BC11B-00032**

---

## DISSENTING OPINION

The majority conditionally grants Jackson's request for mandamus relief from the Business Court's denial of his Rule 91a motion to dismiss, concluding that Barras's tortious interference claim is barred by attorney immunity. Although the majority recognizes that this proceeding hinges on the Rule 91a standard, it mistakenly imposes a much lower threshold for dismissal than the Rule and Texas Supreme Court precedent required.

Crucially, the allegations in Barras's live petition paint a picture of Jackson seeking to oust the CEO of Reynolds—a company that did not employ Jackson as general counsel or in any other capacity—so that Jackson could secure the CEO position for himself. Whatever the limits of attorney immunity may be for in-house attorneys, the facts as pleaded by Barras—*which we must take as true*—preclude any finding that Jackson's conduct qualifies for attorney immunity as a matter of law. To hold otherwise would immunize the conduct of any attorney jockeying for a corporate position to promote his own self-interest. Consequently, I would hold that the Business Court properly denied Jackson's Rule 91a motion. It certainly did not abuse its discretion by doing so.

## I.

The Texas Supreme Court has summarized attorney immunity as

> protect[ing] an attorney against a non-client's claim when the claim is based on conduct that (1) constitutes the provision of "legal" services involving the unique office, professional skill, training, and authority of an attorney *and* (2) the attorney engages in to fulfill the attorney's duties in representing the client within an adversarial context in which the client and the non-client do not share the same interests and therefore the non-client's reliance on the attorney's conduct is not justifiable.

*Haynes and Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 78 (Tex. 2021).

Jackson seeks mandamus relief from the Business Court's order denying his Rule 91a motion to dismiss. To prevail, he must show that (1) the Business Court abused its discretion in denying the 91a motion to dismiss based on attorney immunity, and (2) Jackson has no adequate remedy by appeal. *See In re Essex Ins. Co.*, 450 S.W.3d 524, 526 (Tex. 2014) (per curiam) (orig. proceeding). Only the first

requirement is in dispute here, so I analyze that requirement applying the plain text of the rule and Texas Supreme Court precedent interpreting that rule.

Rule 91a is not a summary judgment motion. It is something else entirely. Rule 91a.1 states that a party may move to dismiss a cause of action if it "has no basis in law or fact." Tex. R. Civ. P. 91a.1. A cause of action has no basis in law if the allegations "do not entitle the claimant to the relief sought." *Id.* Further, a cause of action has no basis in fact if "no reasonable person could believe the facts pleaded." *Id*. Unlike when ruling on a summary judgment motion, a court ruling on a Rule 91a motion "may not consider evidence" and "must decide the motion based solely on the pleading[s] . . . ." *Id.* 91a.6. Crucially, the Texas Supreme Court has instructed that we must consider the "allegations in the plaintiffs' live petition, which *we must accept as true.*" *In re Home Depot U.S.A., Inc.*, No. 25-0317, 2026 WL 1354748, at *1 (Tex. May 15, 2026) (orig. proceeding) (emphasis added).

## II.

When I review the live petition—taking every factual allegation as true as the Texas Supreme Court requires—it is abundantly clear that the Business Court properly denied Jackson's Rule 91a motion. The Business Court would have abused its discretion by ruling otherwise.

The attorney immunity doctrine recognizes that attorneys often wear many hats, and not all of them are protected by immunity. In the business world, attorneys need not be one-trick ponies confined to Westlaw searches and legal analysis. A business attorney often has mastered other skills—such as finance, business, or management skills—that lend themselves to C-Suite offices beyond the general counsel's desk.[1]

---

[1] *See* E. Norman Veasey & Christine T. Di Guglielmo, *The Tensions, Stresses, and Professional Responsibilities of the Lawyer for the Corporation*, 62 BUS. LAW. 1, 27 (2006) ("It has been noted

Attorneys may serve as CEOs, general counsel, board members, vice presidents, or in some combination of roles.[2] Not surprisingly, given the panoply of roles that an attorney can hold within a company, not every action undertaken by someone with a law degree qualifies for attorney immunity. Rather, an attorney's conduct is protected by immunity only when that action "constitutes the provision of 'legal' services involving the *unique* office, professional skill, training, and authority of an attorney . . . ." *Haynes and Boone, LLP*, 631 S.W.3d at 78 (emphasis added). Jackson, like other attorneys in the corporate world, has worn many hats over the course of his career. Barras pleaded that Jackson served as legal counsel for Bob Brockman—the former CEO of Reynolds prior to Barras's tenure as CEO—during the government's criminal tax-evasion case and also acted as a trustee to the Brockman trust, which controls 99% of Reynolds. Following Bob Brockman's

---

by some observers that perhaps the most prominent distinction between the general counsel of several decades ago and contemporary general counsel is the modern general counsel's combination of business with legal advice. In addition, for many general counsel, the business aspects of their jobs may at times predominate. Indeed, the challenges and variety of work undertaken by those engaged in this type of lawyering often is what draws general counsel to their positions." (footnotes omitted)).

[2] *See* Garry W. Jenkins & Jon J. Lee, *Leadership Evolution: The Rise of Lawyers in the C-Suite*, 96 TUL. L. REV. 695, 697 (2022) ("Today's lawyers are blurring the boundaries between law and business and increasingly finding opportunities to use their training to provide value across organizations, including earning offices in the coveted C-suite."); Leanne Fuith, *Creating the Lawyer as a Business Leader*, 43 MITCHELL HAMLINE L. REV. 1095, 1097 (2017) ("More and more lawyers are transitioning from roles as business attorneys and advisors into business leaders, managers, and Chief Executive Officers (CEOs)."); Robert C. Bird & Stephen Kim Park, *The Domains of Corporate Counsel in an Era of Compliance*, 53 AM. BUS. L.J. 203, 227 (2016) ("[I]ndirect evidence of the CLO's [Chief Legal Officer] positive impact on corporate governance can be ascertained from the impact of board members that are trained lawyers."); Donald J. Polden, *Lawyers, Leadership, and Innovation*, 58 SANTA CLARA L. REV. 427, 429-30 (2018) (noting the "prevalence of lawyers in C-Suite positions in major corporations").

death, Jackson grew closer to Bob Brockman's widow, Dorothy Brockman. Jackson began to exert influence over Brockman to the point that she hired him and installed him at Reynold's headquarters in Houston, although Jackson was never employed by Reynolds.

Barras further pleaded that Jackson—along with Dorothy Brockman—intentionally and knowingly interfered with Barras' Employment Agreement with Reynolds. Jackson acted in his own interests, contrary to the interests of Plaintiff and Reynolds. As a direct and proximate result of Brockman and Jackson's intentional actions, Barras was wrongfully terminated from his position as Chairman and CEO of Reynolds. According to Barras's live petition, both Jackson and Brockman described Jackson's work regarding Reynolds as being done in capacities other than as a lawyer. Jackson told Barras that he was handling the changes to the UCS and Reynolds boards in his "capacity as Director of Spanish Step, the majority shareholder of UCS." Dorothy Brockman described Jackson as "the trustee for the Management Trust" and stated that Jackson "works for me."

The question here is whether all of Jackson's conduct in this case—considering only those facts pleaded by Barras taken as true—unequivocally warrants attorney immunity protection as a matter of law from Barras's tortious interference claim, to the point that the claim lacks any colorable legal or factual basis. To meet that demanding standard, Barras's pleadings *themselves* must establish that all of Jackson's actions forming the basis of that claim constitute action in his "uniquely lawyerly capacity of one who possesses 'the office, professional training, skill, and authority of an attorney.'" *Landry's*, 631 S.W.3d at 47 (quoting *Cantey Hanger*, 467 S.W.3d at 482).

5

The majority points out that we cannot infer from Barras's pleadings that Jackson performed *no* legal duties or that his duties did not include legal issues. *Ante* at 7. But we are not required to make such a finding in order for Barras's claims to survive the 91a motion. Courts recognize that some of an attorney's actions may qualify for attorney immunity while other related actions may not. *Landry's*, 631 S.W.3d at 51–52 (explaining that while delivery of a notice letter was "the product of lawyerly work," publicizing those allegations through the media was not a lawyerly duty). Accordingly, Barras was only required to allege that Jackson performed *some* actions that were not in a "uniquely lawyerly capacity of one who possesses 'the office, professional training, skill, and authority of an attorney'" for his claim to have a basis in law. *See id.* (quoting *Cantey Hanger*, 467 S.W.3d at 482).

Significantly, the live pleadings list Jackson as a "business advisor" and include a host of allegations aimed at showing that Jackson's alleged interference occurred not while he was acting as an attorney in a "lawyerly capacity," but while he was acting as "a general business advisor who happened to have a law license."

- Jackson "conducted meetings with Barras's subordinates" and "met with Reynolds' investment team";
- Jackson "immersed himself in all details of Reynolds's business";
- Jackson and Dorothy Brockman "described Jackson's work regarding Reynolds as being done in capacities other than as a lawyer";
- Jackson "told Barras that he was handling the changes to the UCS and Reynolds boards in his 'capacity as Director of Spanish Step, the majority shareholder of UCS'";
- Dorothy Brockman "described Jackson as 'the trustee for the Management Trust' and stated that Jackson 'works for me'";
- Jackson "inserted himself into areas of Reynolds' operations far removed from legal issues";
- Jackson "gave Barras instructions regarding changes to the Reynolds and UCS

6

boards" and "emphasiz[ed] that Brockman had asked him to be involved with the board changes";

- Jackson "met with numerous Reynolds employees on issues involving technology, operations, and product management";

- Dorothy Brockman "directed that Jackson 'be in all strategic type meetings' of Reynolds";

- Jackson "was involved in meetings regarding why Reynolds was having difficulty getting business from publicly traded auto dealerships"; and

- Jackson "was working with Dorothy Brockman on Reynolds' 'strategy/goals/direction/etc…'" [MR:77-79]

The majority claims that none of these actions "have anything to do with terminating Barras." *Ante* at 10. But under Rule 91a we "liberally construe the pleadings *in favor of the plaintiff." City of Hous. v. State Farm Mut. Auto. Ins. Co.*, 712 S.W.3d 707, 713 (Tex. App.—Houston [14th Dist.] 2025, no pet.) (emphasis added). Further, "the trial court may draw reasonable inferences from the factual allegations to determine if the cause of action has any basis in law or fact." *Id.* Liberally construing the pleadings in favor of Barras, the trial court could have inferred that Barras's claim for interference with his contract was based on Jackson's actions as a general business advisor.

The majority also concludes that Barras's claim is barred because Jackson's "advice" as a "business advisor" is "precisely the kind of conduct a corporate attorney is expected to render . . . ." *Ante* at 9. But "attorney immunity does not apply to an activity simply because attorneys often engage in that activity." *Landry's*, 631 S.W.3d at 52. Rather, a court considers whether there is something "particular to 'the office, professional training, skill, and authority of an attorney'" about the alleged actions. *Id.* The actions alleged by Barras are more characteristic of a business advisor and are not particular to the skills and authority of an attorney.

7

Accordingly, they were not conducted in the "uniquely lawyerly capacity . . . ." *Id.* at 47 (quoting *Cantey Hanger*, 467 S.W.3d at 482). As such, there was no basis for granting the Rule 91a motion.

The Fourteenth Court of Appeals's opinion in a remanded and factually similar case, *NFTD, LLC v. Haynes & Boone LLP*, confirms that granting the Rule 91a motion would have been improper. 652 S.W.3d 546 (Tex. App.—Houston [14th Dist.] 2022, no pet.). Prior to the remand, the Texas Supreme Court had expanded the attorney immunity defense to the transactional context "so long as the conduct is the 'kind' of conduct" unique to an attorney. *Haynes and Boone*, 631 S.W3d at 79. The respondent had argued that the conduct in question was not of this kind, asserting that one of the transactional attorneys involved was hired for "any and all business, financial and legal matters" and had acted "only in his own interest." *Id.* at 80. Rather than determining whether the conduct was of the proper kind, the Texas Supreme Court remanded to the Fourteenth Court of Appeals to make that determination itself. 631 S.W.3d at 81.

The Fourteenth Court of Appeals concluded that the conduct was not the proper kind, stating that the attorneys "failed to conclusively prove their attorney immunity defense" and refusing to grant immunity. *NFTD, LLC*, 652 S.W.3d at 559. The court identified the specific attorney conduct that the defendants argued fell outside the provision of legal services, most of which is listed below:

- "'[T]he Bernardo 1 corporate resolution, which Howard prepared, authorized the Lawyers to represent Bernardo 1 and communicate with third parties on "any and all" business, financial and legal matters,' so that 'the Lawyers were involved in the non-legal business/financial decision to sell the Company.'"

- "'Howard also drafted the corporate resolution that commissioned the Lawyers to find someone to buy the Company assets'; and Howard was 'the one who brokered the deal' to sell the company to Bernardo 2."

- "'Howard's overtures to his friend on the buyer's side were done <u>not</u> as a lawyer, but rather more like a broker with a mission to complete the sale and get his firm paid out of the sales proceeds — all without the permission of his client Bernardo 1.'"

- "Howard 'was on his own mission to make sure the deal would go through so his firm could get paid hundreds of thousands of dollars in past-due fees.'"

- "Howard engaged in 'private communications and false assurances about the value of the intellectual property to Miller.'"

- "'[W]hile socializing at a pub with the Bernardo 2 owners, Howard also misrepresented to Peter Cooper that there were no issues with any of the Patents.'"

- "Without Bernardo 1's consent, 'Howard lied to both Cooper and Miller that Bernardo 1 had an anonymous buyer in reserve who would pay cash if Bernardo 2 chose to back out of the deal.'"

*Id.* at 557–58 (alterations in original). Much of this conduct bears some similarity to Jackson's alleged conduct in Barras's petition and would warrant the same conclusion.

In addition, *NFTD* addressed attorney immunity in the context of a summary judgment, in which a court considers evidence demonstrating a fact issue. *Id.* at 554; Tex. R. Civ. P. 166a. In contrast, the case here must be decided on the much stricter Rule 91a standard, in which a dismissal must be made based on the pleadings alone without considering evidence. Tex. R. Civ. P. 91a.6; *see In re Shire PLC*, 633 S.W.3d 1, 21 n.15 (Tex. App.—Texarkana 2021, orig. proceeding [mand. denied]) ("[I]f the trial court cannot determine whether recovery is foreclosed without looking outside the pleadings, then summary judgment may be available, but [Rule 91a] dismissal is not."). Attorney immunity here hinges on the kind of conduct Jackson engaged in, and Jackson would have to establish either that (1) "no reasonable person could believe the facts pleaded," Tex. R. Civ. P. 91a.1, or (2) "*recovery is foreclosed*, i.e., that is *legally impossible* on the face of the pleadings for the plaintiff to

recover . . . ." *In re Shire*, 633 S.W. 3d at 23 (emphasis added). In other words, Barras would have had to effectively plead himself out of court for attorney immunity to be established at this stage in the proceedings. If the court of appeals in *NFTD* found that attorney immunity should not be granted based on summary judgment evidence, 652 S.W.3d at 557, 559, I cannot conclude that the Business Court would have clearly abused its discretion for finding that Jackson is not entitled to immunity under the higher 91a standard in which evidence is prohibited.

Looking solely to the pleadings, as Rule 91a requires, and taking Barras's allegations as true, Tex. R. Civ. P. 91a.1, .6, the Business Court properly denied Jackson's Rule 91a motion. In conditionally granting mandamus, the majority misconstrues the 91a standard—a standard that Texas courts repeatedly acknowledge as requiring strict application. *See, e.g.*, *Davidson v. Heine*, No. 08-24-00035-CV, 2025 WL 1919336, at *5 (Tex. App.—El Paso July 11, 2025, pet. denied) (mem. op.) ("Finally, because it provides a harsh remedy, Rule 91a is strictly construed."); *City of Forest Hill v. Mino*, No. 02-25-00132-CV, 2025 WL 3492583, at *7 (Tex. App.—Fort Worth December 4, 2025, no pet.) (mem. op.) ("Because Rule 91a provides a harsh remedy, it must be strictly construed and narrowly applied."); *Davis v. Homeowners of Am. Ins. Co.*, 700 S.W.3d 837, 842 (Tex. App.—Dallas May 31, 2023, no pet.) ("Rule 91a provides a harsh remedy and should be strictly construed."). This is not to say that attorney immunity cannot be established at trial or on summary judgment. *See In re Shire*, 633 S.W.3d at 21 ("[I]f the defendant cannot demonstrate that the plaintiff's recovery on the claim in its petition are foreclosed as a matter of law, then it may still move for summary judgment, but it is not entitled to dismissal under Rule 91a."). The question here is whether Barras's live pleadings—taken entirely as true—establish the doctrine's applicability. Because they do not, I respectfully dissent.

The blended nature of the role of an attorney working in the upper echelons of business, in which the line between business and legal functions is often blurry and uncertain, makes the issue of attorney immunity ripe for guidance. If petitioned, I would respectfully invite the Texas Supreme Court to grant review of this case to provide clarity on what constitutes the "unique" office and skills of an attorney in this context. *See* Tex. R. App. P. 56.1(a). We otherwise run the risk of immunizing any business-related conduct performed by an attorney. As I stated in my dissent to the previous Order on temporary relief, this Court (and the other courts of appeals for that matter) "should avoid the unjust conclusion that the mere possession of a law license protects business advisors in their performance of business-related functions, especially when those advisors pursue substantial personal interests."

<u>/s/ April Farris</u>
April Farris
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.

11